IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICK RALPH DAY,

                          Plaintiff,                  OPINION AND ORDER

     v.                                    07-cv-0507-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.

---

     Plaintiff Patrick Day suffers from permanent right lower leg pain and swelling as a result of nerve damage sustained during surgery.  In March 2006, he filed an application for Disability Insurance Benefits under sections 216(i) and 223 of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d), alleging that he was no longer able to work as a result of his condition.  After two denials by the local disability agency, plaintiff's application was heard by an administrative law judge, who agreed that plaintiff was not disabled.  That decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review.  Plaintiff now appeals that final decision pursuant to 42 U.S.C. § 405(g).

1

There is no dispute that plaintiff's condition renders him unable to perform any job that requires prolonged standing or walking, such as the construction work he had performed for 20 years before becoming injured.  The question in this case is whether he is capable of meeting the demands of full time sedentary work, which is performed primarily in a seated position with occasional (up to two hours combined) standing or walking.  The administrative law judge found that plaintiff could do so, provided he was not required to stand for more than 30 minutes at a time, perform more than occasional stooping, bending, or crouching or any climbing, crawling or kneeling.  Plaintiff asks this court to reverse the decision of the administrative law judge and remand this case for further proceedings on the grounds that the administrative law judge misconstrued the various medical opinions in the record, omitted significant physical and mental limitations and made an improper credibility determination.

I am rejecting plaintiff's arguments and affirming the commissioner's decision. Although this is a close case, I am persuaded that the administrative law judge properly evaluated the medical opinions and drew reasonable inferences from the evidence as a whole about the severity of plaintiff's symptoms and its effect on plaintiff's ability to work.

The following facts are drawn from the administrative record ("AR").

FACTS

At the time his alleged disability began, plaintiff was 47 years old.  He has a 12th grade education and worked for 20 years as a heavy equipment operator for a road paving company.  In September 2005, he developed a compartment syndrome in his left calf.  This is a condition characterized by increased pressure in the fascial compartment, that can lead to nerve damage or loss of the limb if not treated promptly.  To relieve the pressure, Dr. Margaret Schwarze, a vascular surgeon, performed an emergency fasciotomy, a procedure in which longitudinal cuts were made in the fascia of plaintiff's lower leg.  Although the surgery was successful in relieving the compartment syndrome, about four months later plaintiff continued to complain of significant pain and swelling in his right lower leg.  His primary physician, Dr. David Jarvis, prescribed pain medication and an anti-depressant (Cymbalta) to combat plaintiff's depressed mood associated with his pain and loss of function.

Plaintiff saw Dr. Schwarze on December 27, 2005, reporting that he was still having a lot of pain in his right calf and foot and was having trouble walking and sleeping.  Dr. Schwarze noted that plaintiff's wounds had healed well and there was no evidence of continuing problems from the compartment syndrome.  She was unsure why plaintiff was continuing to have such significant pain, although she raised the possibility that one of the major nerves in plaintiff's lower leg (the saphenous nerve) had been damaged during the fasciotomy.  Dr. Schwarze indicated that plaintiff ought to return to his job and resume his

3

regular activities.  However, she referred him to the University of Wisconsin Pain Clinic. AR 132.

Plaintiff was evaluated on February 17, 2006 by Dr. Miroslav Backonja, a neurologist affiliated with the pain clinic.  Dr. Backonja confirmed what Dr. Schwarze had proposed might be the cause of plaintiff's pain:  an injury to the saphenous nerve.  Dr. Backonja explained that the injury was permanent and that the pain could be lessened somewhat by medications but would never subside completely.  Dr. Backonja was of the opinion that plaintiff could not return to his previous construction work and ought to pursue vocational rehabilitation.  He adjusted plaintiff's medications and recommended that plaintiff begin a physical therapy program after his pain was better controlled.  AR 126-29.

At a visit with Dr. Jarvis on March 9, 2006, plaintiff reported little change in his symptoms.  Dr. Jarvis noted that even light touch produced pain in plaintiff's calf.  He told plaintiff that because of the lower leg pain, it was not realistic at that time for him to return to his past job or any other job on a full time basis.  Dr. Jarvis was hopeful that Dr. Backonja would identify a nerve or nerves that would be amenable to ablation therapy, a process in which the nerve is heated in order to deactivate the pain signal.  If not, he indicated, plaintiff's pain would likely be permanently disabling.  Dr. Jarvis referred plaintiff to a vocational rehabilitation counselor.

At a follow-up visit with Dr. Backonja on March 16, 2006, plaintiff reported that his pain was about the same. Plaintiff was accompanied by someone from his employer's disability department. Dr. Backonja explained that plaintiff's condition was chronic and would require ongoing medical care, most likely with medication. In Dr. Backonja's opinion, "[plaintiff] should be deemed somebody who has disability related to the amputation of his lower extremity, either from below the knee or ankle level." AR 125. Dr. Backonja indicated that plaintiff would likely be restricted to sedentary jobs. (This opinion was seconded by another neurologist, Dr. Marc Novom, who performed an independent medical evaluation of plaintiff on April 14, 2006. In Dr. Novom's opinion, however, plaintiff's chronic neuropathic pain amounted to only a five percent permanent partial disability to his right lower extremity. AR 431-36.) Dr. Backonja referred plaintiff to his clinic nurse, Janet Kunz, to discuss his therapeutic options.

On May 23, 2006, Dr. Jarvis completed a medical report form in connection with plaintiff's application for unemployment insurance. He indicated that he had recommended that plaintiff seek vocational retraining for a sedentary job, noting: "As pain control progresses, I think he will be able to work in the future." AR 217. Dr. Jarvis indicated that plaintiff should avoid climbing, crouching, crawling, kneeling and balancing and that he could work at most 17 hours a week. AR 217-218.

5

On June 13, 2006, Dr. Zhen Lu, a consultant for the state disability agency, reviewed plaintiff's medical record and completed a residual functional capacity assessment.  Dr. Lu determined that plaintiff was capable of meeting the exertional demands of sedentary work. AR 183-188.

Plaintiff underwent a Functional Capacity Evaluation on June 19 and 20, 2006. According to the summary report from that evaluation, plaintiff was able to sit 67-100 percent of an eight-hour workday, stand 34-66 percent of an eight-hour day and walk one to five percent of an eight-hour day.  Plaintiff had a significant ability to work while sitting but significant problems with walking, balancing, carrying or lifting.  AR 210-212.

At a follow-up visit with Dr. Jarvis on June 21, 2006, plaintiff reported that he continued to have daily leg pain and swelling with any kind of activity.  He said he had had intense pain during the previous few days because of the physical capacity testing.  He was able to walk up to five blocks but then had to sit for 10 to 15 minutes before he headed home because of pain.  Plaintiff said he could not drive for more than an hour before having to get out and walk and sit for awhile; afterwards, the lower leg would swell and become quite sore.  Plaintiff was working with the Department of Vocational Rehabilitation and had applied for a desk job as a maintenance supervisor at a local casino.  Dr. Jarvis observed that plaintiff was walking better although his gait was still a bit guarded.  AR 322.

On July 5, 2006, plaintiff told Dr. Jarvis that he continued to have pain and swelling associated with veins noticeably "popping out" in his right lower leg if he sat for more than 15 minutes.  Dr. Jarvis noticed that plaintiff's veins were visible and slightly palpable and that his gait was still markedly abnormal.  Dr. Jarvis noted that plaintiff appeared to have worsening venous circulation that was probably associated with the swelling in his leg.  Dr. Jarvis was of the opinion that plaintiff would be able to work four hours a day at most, although he questioned whether plaintiff could work five days a week "due to the difficulty he has with any sustained posture of sitting or standing or walking, as he has to change postures frequently and rest frequently."  AR 318.

On July 7, 2006, plaintiff saw Kunz, the nurse practitioner at the pain clinic.  She noted that plaintiff's pain was unchanged overall in spite of the methadone, gabapentin and Cymbalta he was taking.  Plaintiff reported that he had swelling on a daily basis but was unable to tolerate compression stockings.  He could sit for a maximum of 1 to 1 ½ hours at a time.  Plaintiff was continuing to exercise to improve his strength and function, reporting that he was able to walk 5 blocks if he broke it into 1 ½ block intervals, swim for 15 minutes and bike for about 10-12 minutes, although these activities increased the pain and swelling in his leg.  Plaintiff reported that he slept poorly and that his pain averaged a 6 on a 10-point scale.  Kunz noted that plaintiff walked with a considerable limp.  In her opinion, plaintiff

could perform sedentary work, beginning with four hours a day with hourly brief breaks for change of position, to "advance as tolerated to 8 hours per day." AR 293.

On July 10, 2006, Dr. Jarvis wrote a letter to the Disability Determination Bureau. After outlining the course of plaintiff's injury, his diagnosis and treatment, Dr. Jarvis stated his opinion that plaintiff was unable to perform full time, competitive employment. Dr. Jarvis explained that in spite of the efforts of plaintiff and his doctors to control plaintiff's pain, he still was unable to tolerate any sustained activity, including sitting, for more than one hour before having to take a break. He indicated that plaintiff would be able to work at most four hours a day, but only "in interrupted portions to accommodate breaks as needed." AR 298. He also thought plaintiff was not able to carry more than 5 pounds, and then only infrequently. In Dr. Jarvis's opinion, plaintiff had a normal capacity for carrying out instructions, relating appropriately to other people in a work setting and handling normal work pressures.

In late August 2006, Dr. Amy DeLong took over for Dr. Jarvis as plaintiff's primary physician. In October 2006, Dr. DeLong referred plaintiff to a counselor after he indicated that he was becoming very depressed because of his pain, inability to work, financial stress and marriage problems. Plaintiff said his wife had recently left him because of his inability to work and his mood swings. AR 462. Plaintiff saw Nancy Pelonquin, a clinical social

8

worker, on October 9, 2006.  Pelonquin diagnosed plaintiff with dysthymia, but indicated that he might be suffering from major depression.  AR 440.

Plaintiff saw Kunz on January 30, 2007, reporting continuing concerns with pain and swelling in his leg.  On examination, Kunz noted that plaintiff's right leg was cool to the touch, swollen along the tibial shaft and had a dusky pallor.  Plaintiff had decreased his use of methadone after only a brief trial and was taking it at night only, reporting that it had not provided effective pain relief.  Kunz encouraged plaintiff to repeat the trial of methadone on a three-times-a-day basis.  She indicated that if the methadone was ineffective on the repeat attempt, she would recommend opioid rotation to extended release morphine.  AR 447-48.

On April 11, 2007, Dr. DeLong wrote a letter in support of plaintiff's application for disability benefits.  Dr. DeLong indicated that plaintiff had chronic pain and was unable to sit or stand for any length of time.  AR 445.  Kandi Ryan, a nurse at the House of Wellness Clinic where Dr. DeLong worked, wrote a similar letter, indicating that plaintiff had chronic pain in his leg and that he had been compliant with his medication regime.  AR 443.

At the administrative hearing on April 17, 2007, plaintiff testified that he had constant pain in his leg that averaged a seven or eight on a 10-point scale.  He said he could walk about five blocks, sit for 45 minutes at a time and stand for about 25 minutes before experiencing a significant increase in pain.  He said that when he was seated, he elevated his leg to chair height if he could.  Plaintiff estimated that he could lift at most 10 pounds

9

repetitively and that his ability to lift or carry things was affected by his leg problem. Plaintiff lived alone in an apartment. He had two boys, ages seven and eight, who lived with him on alternating weekends and helped him with simple housecleaning and food preparation. Plaintiff said he liked to take walks or go fishing with his sons, but his leg began to swell if he was too active. He was working with the Department of Vocational Rehabilitation to try to find a job.

Plaintiff said he had seen Dr. Backonja on March 20, at which time the doctor had increased his methadone. With respect to medications, plaintiff's lawyer asked the following compound question: "And how do the medications work? I mean are they affective [sic]? Do you still have problems despite taking those?" AR 479. Plaintiff responded that initially he had had a hard time taking the methadone because it made him constipated. He said the drug also caused him to feel lightheaded.

Jacquelyn Wenkman testified as a vocational expert. The administrative law judge asked Wenkman whether there were any occupations in Wisconsin that could be performed by an individual of plaintiff's age, education, and work experience who was able to perform sedentary work but who could stand for only 30 minutes at a time; perform only occasional stooping, bending or crouching; could not perform any climbing, crawling or kneeling; and had limited but satisfactory abilities to maintain attention and concentration, understand, remember and carry out detailed job instructions; and demonstrate reliability. AR 489.

10

Wenkman testified that such an individual could perform various sedentary, unskilled jobs, citing as examples assembly (5,900 jobs in Wisconsin); inspection (1,100 jobs); attendant or monitor (2,000 jobs); general office (1,100 jobs) and information clerk (955 jobs).  AR 490.  She said that if the individual had the additional limitation of being unable to sit for more than 45 minutes at a time, he or she would be unable to perform half of the assembly and inspection jobs she had cited but would still be able to perform all of the remaining jobs, which allowed for sitting or standing at will.  AR 490-91.

In response to a question by the administrative law judge, the vocational expert testified that her testimony was consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.  AR 490.  Neither the administrative law judge nor plaintiff's lawyer asked the vocational expert to cite specific job numbers from the <u>Dictionary</u> or to explain what data she had relied on for her estimates of the numbers of jobs in each category that plaintiff could perform.

After the hearing, the administrative law judge issued a decision finding plaintiff not disabled.  After finding that plaintiff suffered from post-traumatic saphenous neuralgia and dysthymia that imposed more than minimal limitations on his ability to work, the administrative law judge determined that plaintiff remained capable of performing a range of sedentary work requiring no more than occasional stooping, bending or crouching and no climbing, crawling or kneeling.  The administrative law judge found that plaintiff was able

to stand for up to a half hour and that he had a limited but satisfactory ability to perform work requiring that he maintain attention and concentration, understand, remember and carry out detailed instructions; and demonstrate reliability.

In making this finding, the administrative law judge found that although plaintiff's impairments could reasonably be expected to produce his alleged symptoms of depressed mood and pain, plaintiff's statements "concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." AR 15. The administrative law judge noted that plaintiff's testimony regarding his ability to sit, stand and lift, as well as his reported activities, which included washing dishes, cooking, doing laundry, shopping and going out to dinner or movies, "would reasonably allow for a fair range of sedentary work." Id. He also found that with the exception of the providers at the House of Wellness, plaintiff's "treating sources [had] been fairly unanimous in finding a capability for sedentary work," a finding that was consistent with the opinion of the consulting physician who had reviewed plaintiff's records for the local disability agency. AR 15-16. The administrative law judge acknowledged that Dr. DeLong and nurse Kandi Ryan had indicated that plaintiff was unable to sit or stand for any length of time, but he found their opinions not persuasive.

The administrative law judge noted that although Dr. Jarvis had recommended in May 2006 that plaintiff seek vocational rehabilitation for a sedentary job, he reported on July 10, 2006 that plaintiff could not sit for more than one hour or lift and carry more than

12

five pounds.  The administrative law judge found this latter opinion unpersuasive, finding that Dr. Jarvis had neither clearly outlined "the connection between a lower leg injury and an inability to lift more than five pounds" nor explained why he had deviated from his position, held just two months earlier, that plaintiff could perform sedentary work.  AR 14, 15.  He also noted that Dr. Novum had found from his independent medical evaluation that plaintiff had a "relatively minimal" five percent disability of the leg that would not preclude him from sedentary activities, that the most recent records from the University of Wisconsin Pain Clinic also suggested that plaintiff could return to sedentary work and that one of the treatment records showed that plaintiff was advised to "ambulate, ambulate, ambulate" to improve his condition.

With respect to mental limitations, the administrative law judge noted that plaintiff's complaints appeared to be related primarily to his physical condition and that the state agency consultants had found that plaintiff's mental impairments imposed no more than mild limitations.  Nonetheless, the administrative law judge found from plaintiff's testimony concerning his pain and medication use that he would have moderate limitations in the area of concentration, persistence and pace.

On the basis of Wenkman's testimony, the administrative law judge found that plaintiff was not disabled because there were a significant number of jobs in the economy

13

that he could perform, including assembly, inspection, attendant or monitor, general office and information clerk.

OPINION

In making his findings, the administrative law judge followed the established five-step sequential process for evaluating whether a claimant is disabled" under the Act. The burden is on the claimant to show that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or that can be expected to last for a continuous period of not less than 12 months or can be expected to result in death.  42 U.S.C. § 423(d)(1)(A).  Under the five-step process, the administrative law judge considers first whether the claimant is engaged in a "substantial gainful activity." 20 C.F.R. § 404.1520(b).  If not, the administrative law judge considers whether the claimant has an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. § 404.1520(c).  If so, the judge determines whether the impairment meets or equals any of the Listings found in the regulations. See id. pt. 404, subpt. P, app. 1. If the claimant's impairment is found to meet or equal one of the Listings, the claimant is deemed disabled. See id. § 404.1520(d).

14

If the claimant's impairments do not meet or equal a listed impairment, the administrative law judge determines the claimant's residual functional capacity.  If the administrative law judge finds that the claimant's residual functional capacity does not allow the claimant to perform past relevant work, the burden shifts to the Social Security Administration to "provide evidence" demonstrating that, in light of the claimant's age, education, job experience and functional capacity to work, the claimant is capable of performing other work that "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); Stein v. Sullivan, 892 F.2d 43, 44 n. 1 (7th Cir. 1990).

Plaintiff does not challenge the administrative law judge's findings at steps one through three of the sequential evaluation process.  He argues that substantial evidence does not support the administrative law judge's residual functional capacity determination at step four or his determination at step five that there are a significant number of jobs in the national economy that plaintiff can do.

The court must uphold an administrative law judge's denial of disability benefits so long as the decision is supported by substantial evidence and does not rest on an error of law. 42 U.S.C. § 405(g); Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007).  Substantial evidence exists if a reasonable person could conclude that there is enough evidence to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004).  While a scintilla is insufficient to support the

15

administrative law judge's findings, no more evidence is required than "such evidence as a reasonable mind might accept as adequate to support a conclusion." Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995) (internal quotation marks omitted).

A.   Residual Functional Capacity Assessment and Corresponding Hypothetical

A claimant's "residual functional capacity" is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Social Security Ruling 96-8p; see also 20 C.F.R. § 404.1545. A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule." Id. At the disability hearing stage, the responsibility for determining the claimant's residual functional capacity lies with the administrative law judge, who must consider all relevant medical and other evidence in the record, including statements from medical sources, the claimant and others. 20 C.F.R. §§ 404.1545, 404.1546.

The administrative law judge determined that plaintiff retained the residual functional capacity to perform sedentary work requiring no more than occasional stooping, bending or crouching; no climbing, crawling or kneeling; and no standing for more than a half hour at a time.  He also found that plaintiff had a limited but satisfactory ability to maintain attention and concentration, understand, remember and carry out detailed instructions; and demonstrate reliability.  Sedentary work "involves lifting no more than 10 pounds at a time

16

and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20

C.F.R. § 404.1567(a).  It involves primarily sitting, although "a certain amount of walking

and standing is often necessary in carrying out job duties."  Id.  In general, a person must be

able to stand and walk for approximately two hours of an eight-hour workday in order to be

able to perform sedentary work.  Social Security Ruling 96-9p.

Plaintiff contends that the administrative law judge misconstrued the medical

opinions when he found that, apart from the House of Wellness practitioners, the medical

sources were "fairly unanimous" in finding that plaintiff was capable of sedentary work.

Plaintiff argues that it was erroneous for the administrative law judge to assume that these

medical sources understood how the Social Security Administration defines the term

"sedentary" when they found that plaintiff could perform such work.  I disagree.  The

administrative law judge reasonably could assume that the medical sources were generally

aware that sedentary work entailed work performed primarily in a seated position.  Plaintiff

points to various statements within these reports that he claims are inconsistent with

sedentary work, but his arguments are unpersuasive.  Dr. Backonja's statement that

"[plaintiff] should be deemed somebody who has disability related to the amputation of his

lower extremity, either from below the knee or ankle level" does not advance plaintiff's

position, for even an amputee is not presumed disabled unless his impairment results in the

"inability to ambulate effectively," which is a term of art under the social security listings.

17

20 C.F.R., Pt. 404, , Subpt. P, App. 1, Listing 1.05, 1.00B.2.b.  Plaintiff does not contend that he satisfies this requirement.  Similarly, plaintiff's contention that Dr. Novum found that he cannot stand or walk enough to perform even the "occasional" walking and standing required of sedentary work is a conclusory argument that lacks any support in the record. Indeed, as the administrative law judge noted, Dr. Novum's determination that plaintiff's leg injury resulted in only a five percent partial disability to the right leg supported the determination that plaintiff could perform sedentary work.  Further, the administrative law judge accounted for plaintiff's limitations on standing or walking by finding that he could stand for only a half hour at a time.

In any case, the medical opinions are largely irrelevant to the question whether plaintiff can meet the exertional demands of sedentary work.  At the hearing, plaintiff testified that he is capable of sitting up to 45 minutes at a time, standing for 25 minutes at a time, walking five blocks and lifting up to 10 pounds.  This testimony reasonably supports the administrative law judge's finding that plaintiff can meet the sitting, standing and lifting requirements of sedentary work.  (Although the administrative law judge did not include a sitting limitation in his residual functional capacity assessment, the vocational expert indicated that plaintiff still would be able to perform a significant number of jobs if he was limited to sitting for 45 minutes at a time.)  And, as plaintiff points out, the results of the

functional capacity evaluation showed that he could perform work at the sedentary exertion level.

Plaintiff contends that the administrative law judge erred in not finding that plaintiff must elevate his leg while seated.  As evidence to support this limitation, he cites to an October 25, 2005 office note from Dr. Schwarze, wherein she wrote that plaintiff should "not walk more than 10 minutes per hour or stay elevated for more than that amount of time as I do think he is susceptible to swelling, and this could certainly exacerbate his healing." AR 136.  As the commissioner points out, Dr. Schwarze wrote this note just six weeks after she had operated on plaintiff's leg, while plaintiff was still recovering from his surgery.  Indeed, by the end of December 2005, Dr. Schwarze was recommending that plaintiff return to his construction work.  Thus, to the extent Dr. Schwarze's October 25 note can be read as including a requirement that plaintiff elevate his leg periodically, it was at best a temporary requirement that does not constitute substantial evidence of plaintiff's current limitations.  Further, Dr. Schwarze's recommendations are of limited probative value because they were made with the understanding that plaintiff's only injury was the compartment syndrome and subsequent surgery.  Dr. Schwarze was never asked what she thought plaintiff's limitations would be as a result of the injury to his saphenous nerve.

Plaintiff's challenge to the administrative law judge's assessment of his mental limitations is also unpersuasive.  As the administrative law judge pointed out, the only

19

opinions specifically addressing plaintiff's mental functioning were those of the state agency physicians, who found that plaintiff's mental functioning was only mildly restricted.  At the hearing, plaintiff testified that his depression was "pretty much" resolved.   The administrative law judge explained that in finding that plaintiff was moderately limited in his ability to concentrate and perform with reasonable persistence and pace, he was accounting for plaintiff's subjective complaints of pain and medication side effects more so than on any medical opinions.  Contrary to plaintiff's argument, the administrative law judge's findings with respect to his mental limitations were adequately explained and are supported by substantial evidence in the record.

The most difficult question is whether substantial evidence supports the administrative law judge's determination that plaintiff is able to perform sedentary work for eight hours a day, five days a week.  Plaintiff's contention that he cannot work full time is supported by his treating physician, Dr. Jarvis, who expressed his opinion in a report dated July 10, 2006.  According to Dr. Jarvis, because of severe pain, plaintiff would be capable of working only four hours a day, and even then would be unable to tolerate any sustained activity, including sitting, for more than 60 minutes before needing a break.

Under the commissioner's regulations, a treating physician's opinion is entitled to "controlling weight" if it is well-supported and no evidence exists to contradict it.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When, however, the record contains well-supported

20

contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole, and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When the evidence includes an opinion from the claimant's treating physician, the administrative law judge must provide good reasons for the weight he gives that opinion.  20 C.F.R. § 404.1527(d)(2).

The administrative law judge discussed Dr. Jarvis's July 2006 opinion.  After noting that Dr. Jarvis had indicated that plaintiff was unable to sit for more than an hour or lift and carry more than five pounds, the administrative law judge stated: "[T]he connection between a lower leg injury and an inability to lift more than five pounds is not clearly outlined, and I find that this is not a persuasive opinion." AR 14.  Later in his decision, the administrative law judge noted: "Dr. Jarvis initially recommended vocational rehabilitation for sedentary employment although two months later and for no apparent reason he submitted that the claimant was far more limited." AR 15.  The administrative law judge also contrasted Dr. Jarvis's July 2006 opinion with those of the other medical sources, whom he found were fairly unanimous in finding that plaintiff could perform sedentary work.

21

Plaintiff argues (in his reply) that Dr. Jarvis's May 23, 2006 opinion that plaintiff could perform sedentary work was a qualified opinion that was not inconsistent with his more restrictive opinion of July 2006.  Plaintiff points out that in the May report, Dr. Jarvis stated:  "As pain control progresses, I think [plaintiff] will be able to work in the future." AR 217.  Plaintiff asserts that his pain did not come under control, and therefore the administrative law judge should have accepted Dr. Jarvis's later opinion.

I agree that the administrative law judge did not say anything in his decision that shows that he understood the qualified nature of Dr. Jarvis's initial opinion that plaintiff could perform sedentary employment.  Even so, I am satisfied that the administrative law judge reasonably evaluated the evidence and cited good reasons for rejecting Dr. Jarvis's July 2006 opinion.  Notably, plaintiff does not challenge the administrative law judge's finding that Dr. Jarvis's five-pound lifting limitation was poorly explained.  Having found a lack of evidence to justify some of Dr. Jarvis's findings, the administrative law judge could reasonably question the credibility of the entire report.  Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence" in the record).

Further, the administrative law judge could reasonably question Dr. Jarvis's restrictive opinion where all the other medical sources who examined plaintiff or reviewed his medical records were of the view that he ought to be able to return to sedentary employment.

22

Plaintiff argues that the administrative law judge erred in making this finding because Kunz, the nurse practitioner at the pain clinic, actually agreed with Dr. Jarvis that plaintiff could not sustain full time work.  Whether Kunz so agreed, however, is debatable.  Admittedly, her statement that plaintiff could "[a]dvance as tolerated to 8 hours per day" is not exactly a ringing endorsement of plaintiff's ability to work full time.  However, I cannot say that it was unreasonable for the administrative law judge to find that her statement *suggests* that plaintiff was capable of full time sedentary employment.

Finally, to the extent Dr. Jarvis's or any other treating source's opinion was based on plaintiff's subjective complaints of pain, the administrative law judge could reject that opinion insofar as he found that plaintiff's subjective complaints were not entirely credible.  White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005) (administrative law judge could reject treating physician's opinion that was based on plaintiff's subjective complaints that administrative law judge properly finds are not credible); Young v. Sec'y of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990) (doctor's report that merely repeats patient's assertions about her level of pain and ability to sleep, stand, and walk is not objective medical evidence).  Plaintiff's challenges to the administrative law judge's credibility determination fall short of showing that it was patently wrong.  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (court will affirm administrative law judge's credibility finding unless it is patently wrong).  Although there is no doubt that plaintiff's

23

lifestyle is restricted significantly because of his leg pain, the administrative law judge could reasonably conclude from plaintiff's ability to dine out, go to movies and grocery shop that he is able to get out of the house, ambulate sufficiently and maintain attention for long enough periods to allow him to perform the limited walking, standing and mental demands required of unskilled sedentary work.  Further, plaintiff's testimony that he had looked for jobs and was working with the Department of Vocational Rehabilitation reasonably supports the inference that plaintiff's pain is not totally disabling.  Finally, the administrative law judge did not ignore plaintiff's severe pain or side effects from his medications, as plaintiff contends.  To the contrary, the administrative law judge found that plaintiff's pain and medications posed limitations on plaintiff's ability to maintain attention and concentration, understand, remember and carry out detailed instructions; and demonstrate reliability.

Overall, I am satisfied that substantial evidence in the record supports the administrative law judge's residual functional capacity assessment.  The administrative law judge addressed all the important evidence and articulated his findings sufficiently to permit the court to review the basis for his conclusions.  Although a different finder of fact might have reached a different conclusion, the administrative law judge's determination that plaintiff's leg pain does not preclude him from performing a limited range of sedentary work is based upon reasonable inferences from the record.  Accordingly, I must affirm it.

B.  Step Five Determination

Plaintiff contends that reversal is required because the vocational expert's testimony that plaintiff could perform the jobs of assembler, inspector, attendant or monitor, general office worker and information clerk is inconsistent with the information contained in the Dictionary of Occupational Titles.  Citing various jobs within these categories as described in the Dictionary, plaintiff argues that these jobs exceed plaintiff's residual functional capacity because they are performed at the light exertional level or because they are semi-skilled.  Plaintiff's challenge amounts to an argument that the commissioner failed to satisfy his burden at step five of the sequential evaluation process of providing evidence demonstrating that other work the claimant can perform exists in significant numbers in the national economy.

Social Security Ruling 00-4p explains that in meeting his burden at step five, the commissioner can rely on information contained in the Dictionary of Occupational Titles, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs.  See also 20 C.F.R. §§ 404.1566(d)(1) and 416.966(d)(1) (Social Security Administration has taken administrative notice of the Dictionary).  Alternatively, the administrative law judge can rely on testimony from the vocational expert.  20 C.F.R. §§ 404.1366(e) and 416.966(e); SSR 00-4p.  However, an administrative law judge who takes testimony from a vocational expert about the requirements of a particular job "has an

25

affirmative responsibility to aks about any possible conflict between that VE or VS evidence and information provided in the DOT."  SSR 00-4p.  If there is an apparent unresolved conflict, the administrative law judge must obtain a reasonable explanation for the apparent conflict.  Id.

Plaintiff argues that to comply with his "affirmative responsibility," the administrative law judge in this case was required to ask the vocational expert to support her testimony with specific occupational titles and numbers from the Dictionary, and further, to ensure that the vocational expert was telling the truth when she said her testimony was consistent with the information in the Dictionary.  Although I agree that it would be helpful if administrative law judges required vocational experts to support their testimony with specific citations from the Dictionary, I disagree that SSR 00-4p requires administrative law judges to take that step.  The ruling reasonably allows administrative law judges to assume that a vocational expert who swears under oath that her testimony is consistent with the Dictionary is telling the truth, requiring further inquiry only if the expert says her testimony is *not* consistent with the Dictionary.  At least in cases where the claimant is represented by a lawyer, there is little that is unfair about this procedure.  In spite of the non-adversarial nature of social security hearings, it remains the case that a vocational expert is "free to give a bottom line, provided that the underlying data and reasoning are available on demand."  Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002).  A lawyer who wants to cross-check the job

26

titles cited by a vocational expert against the descriptions set forth in the <u>Dictionary</u> is free to ask the expert to provide the relevant <u>Dictionary</u> citations; if the expert refuses to provide this information, the result is likely to be a remand.  <u>Accord</u> <u>McKinnie v. Barnhart</u>, 368 F.3d 907, 911 (7th Cir. 2004) (data underlying vocational expert's testimony was not "available on demand" where vocational expert testified that her figures were based on government statistics and her own surveys but had not prepared a written report, did not bring any reference materials to the hearing and could not provide citations to the materials on which she relied and administrative law judge told claimant's attorney that expert could refuse to compile her data and references unless claimant compensated her for her time).  Further, a lawyer who does not have adequate time to consult with the <u>Dictionary</u> on the spot can ask for a brief recess or for time to supplement the record after the hearing.  <u>Britton v. Astrue</u>, 521 F.3d 799, 804 (7th Cir. 2008) (suggesting ways to balance "the needs of the claimant to effectively cross-examine the VE and the needs of the Commissioner to hold efficient hearings").  He cannot, however, allow the vocational expert's testimony to go unchallenged and then expect to raise those belated challenges in court, as plaintiff's lawyer seeks to do here.

Even though plaintiff forfeited his opportunity to challenge the expert's testimony, for the sake of completeness I note that this does not appear to be a case in which a miscarriage of justice will result if the vocational expert's testimony is allowed to stand.  As

27

the commissioner points out, the <u>Dictionary</u> contains several assembly jobs that can be performed at the sedentary, unskilled level including Final Assembler, DOT 713.687-018; Dial-Screw Assembler, DOT 715.684-082; and Atomizer Assembler, DOT 706.684-030. My own search has located other jobs that are sedentary and unskilled, including Telephone Quotation Clerk, DOT 237.367-046, Dowel Inspector, DOT 669.687-014 and Film Touch-up Inspector, 726.684-050.  Although the vocational expert was not asked to cite examples from the <u>Dictionary</u>, it is reasonable to assume that these were some of the unskilled, sedentary jobs to which she was referring in her testimony.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Patrick Ralph Day's application for disability insurance benefits, is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 12th day of June, 2008.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

28